CONTINENTAL ILLINOIS NATIONAL BANK AND TRUST COMPANY OF CHICAGO, Trustee, Plaintiff-Appellee, *v.* ELIZABETH WARD BAILEY *et al.*, Defendants-Appellees.—(JEAN MATILDA WARD MUSICK *et al.*, Defendants-Appellants and Cross-Appellees; JENNIE FRANCES WARD STEWART *et al.*, Defendants-Appellees and Cross-Appellants.)

First District (4th Division)    No. 81-129

Opinion filed March 18, 1982.

Chapman and Cutler, of Chicago (James N. Zartman and Raymond A. Fylstra, of counsel), for appellants.

Paul A. Lutter and Robert W. Sacoff, both of Ross, Hardies, O'Keefe, Babcock & Parsons, of Chicago, for appellee Martha Jeane Shelhamer.

Jay A. Canel, Lawrence A. Robins, and Don E. Glickman, all of Rudnick & Wolfe, of Chicago, for appellees Jennie Frances Ward Stewart, Edward Ward Stewart, Elizabeth Stewart, and Francis Edward Shelhamer.

Lord, Bissell and Brook, of Chicago, for appellee Continental Illinois National Bank and Trust Company of Chicago.

Gerber and Gerber, of Chicago, for other appellees.

JUSTICE ROMITI delivered the opinion of the court:

This case involves the construction of a will. Originally the property was placed in trusts divided among various children. The trust property of certain children has now been distributed and only property of certain other children remains in trust. Two of these children died recently without issue. According to the will, their trust property under such circumstances was to be added to and divided among the other "then existing shares or parts of my said trust estate." The principal issue in this case is whether this language is to be literally enforced and the property divided only between the two shares of trust property still in existence or whether the property is to be divided among the heirs of all the children even though as to the others, the trusts terminated several years before the deaths of the children without issue. We agree with the trial court that the language of the will must be enforced as it is written and affirm. We also hold that the trial court erred in awarding attorney fees.

Edward J. E. Ward (testator) executed his will December 28, 1931. At that time he was 75; his wife was 80. There were eight living children.

They were:

| NAME | AGE IN 1931 | NUMBER OF CHILDREN IN 1931 |
|---|---|---|
| Charles H. Ward | 56 | None |
| Samuel H. Ward | 54 | 1 |
| Mrs. Susan Shelhamer | 52 | 2 |
| Thomas H. Ward | 48 | 5 |
| Dora Ward | 43 | None |
| Mrs. Jennie F. Stewart | 42 | 1 |
| Mrs. Elizabeth Bailey | 40 | None |
| Mrs. Annie McKiernan | 38 | None |

There was also one grandchild (Edward J. E. Ward II), son of another deceased child.

The will, after bequeathing the personal property to testator's wife, left the rest of the estate in trust. The widow was to be paid $25,000 yearly out of the net income of the trust, and the balance of the net income of the trust during the widow's lifetime was to be paid to the eight children. Immediately upon her death $25,000 was to be set aside for Edward J. E. Ward II. This amount was to be turned over to him at age 40. The rest of the trust was to be distributed as follows:

"*Paragraph 6.* (a) Immediately upon the death of my said wife, or after my death should she predecease me, and after my said Trustees (or Trustee) have set aside said trust fund for my said grandson, Edward J. E. Ward, II, provided the contingencies have arisen for establishing the same, then in the event that all of my said eight children, Charles H. Ward, Samuel H. Ward, Thomas H. Ward, Mrs. Susie Shelhamer, Mrs. Lizzie Bailey, Mrs. Annie G. McKiernan, Mrs. Jennie F. Stewart and Dora Ward, are living, my said Trustees (or Trustee) shall divide the balance of my said trust estate into eight equal shares or parts as nearly as practicable, or in the event of the death of any one or more of my said eight children prior to the death of my said wife, or prior to my death should she predecease me, leaving no lawful issue him, her or them surviving, then my said Trustees (or Trustee) shall divide the said balance of my said trust estate into as many equal shares or parts as the difference between eight and the number of my said eight children who shall have died prior to the death of my said wife, or prior to my death should she predecease me, leaving no lawful issue him, her or them surviving, and shall pay the net annual income in as nearly equal quarterly payments as possible from one of said

shares or parts to each of my said children for and during the terms of their natural lives.

(b) In the event that one or more of my said eight children shall have died prior to the death of my said wife, or prior to my death should she predecease me, leaving lawful issue him, her or them surviving, then the said lawful issue of my said deceased child or children shall be alloted, *per stirpes* and not *per capita*, the share or part of my said trust estate to which his, her or their deceased parent or parents would have been entitled if living at the time of the death of my said wife, or at my death should she predecease me, and my said Trustees (or Trustee) shall pay the net annual income from the said share or part which has been allotted to the lawful issue of such child of mine so dying in as nearly equal quarterly payments as practicable for a period of twenty-one years after the death of such child of mine so dying, or twenty-one years after the death of the survivor of myself and my wife, whichever may be last, share and share alike, *per stirpes* and not *per capita*.

After the expiration of said period of twenty-one years, my said Trustees (or Trustee) shall convey, assign, transfer, set over and deliver the principal and all unexpended net income from the said share or shares, part or parts, which have been allotted to the said lawful issue of any such deceased child or children of mine, to the then living lawful issue of my said deceased child or children, share and share alike, *per stirpes* and not *per capita*, to be his, hers or theirs absolutely forever.

(c) In the event that the lawful issue of any one of my said deceased children should all die prior to the expiration of the said period of twenty-one years, then the principal and all unexpended net income of and from the said share or part to which such lawful issue would have been entitled if living at the expiration of the said period of twenty-one years shall become a part of the principal of my said trust estate and be divided as nearly equally as possible and added to the other shares or parts of my said trust estate.

*Paragraph 7.* (a) Whenever, after the death of my said wife and after my said trust estate has been divided into shares or parts by my said Trustees (or Trustee) among my then surviving children and the lawful issue of any deceased child of mine, any one of my said children shall die without leaving lawful issue him, her or them surviving, the share or part, including all principal and unexpended net income therefrom which had been allotted by my said Trustees (or Trustee) to said child of mine so dying, shall become a part of my said trust estate and be divided as nearly equally as possible by

my said Trustees (or Trustee) and added to the other then existing shares or parts of my said trust estate.

(b) When, however, after the death of my said wife and after my said trust estate has been divided into shares or parts by my said Trustees (or Trustee) among my then surviving children and the lawful issue of any deceased child of mine, any one of my said children shall die leaving lawful issue him, her or them surviving, the said lawful issue of my said child so dying shall be allotted, *per stirpes* and not *per capita*, the share or part of his or her deceased parent, and the annual income from said share or part and the principal and unexpended net income of said share or part of my said trust estate shall be conveyed, assigned, transferred, set over and delivered by my said Trustees (or Trustee) in the same manner and with the same limitations as are contained in sections (b) and (c) of Paragraph 6 of this my Will. It being my intention that the lawful issue of any of my said children who shall die after a share or part of my said trust estate has been allotted to any such deceased child of mine so dying shall be regarded as though this share or part had been originally allotted to such lawful issue, *per stirpes* and not *per capita*, under section (b) of Paragraph 6 of this my Will and that distribution of such share or part and of the net annual income therefrom be made to such lawful issue by my said Trustees (or Trustee) in accordance with said sections (b) and (c) of said Paragraph 6."

Testator died June 28, 1932. His wife died in January 1933. All of the eight children are now dead. They died as follows:

| NAME | DATE | NUMBER OF CHILDREN |
|---|---|---|
| Charles H. Ward | 1936 | None |
| Samuel H. Ward | 1951 | 1 |
| Mrs. Susan Shelhamer | 1971 | 2 |
| Thomas H. Ward | 1952 | 6 |
| Dora Ward | 1977 | None |
| Mrs. Jennie F. Stewart | 1981 | 1 |
| Mrs. Elizabeth Bailey | 1979 | None |
| Mrs. Annie McKiernan | 1940 | None |

Since the trusts were to be distributed to the grandchildren 21 years after their respective parent's death, the trust estates of the children of Samuel Ward and Thomas Ward, which each amounted to over $1 million, were distributed in early 1973 and June 1973 respectively. The trust estate of Susan's children will not be distributed until 1992 and that

of Jennie's child not until 2002. In the meantime they are only receiving the net income for their respective shares.

Dora Ward and Elizabeth Bailey died in 1977 and 1979 respectively, without heirs. Under paragraph 7(a) of the will, their shares become part of the trust estate. Although the shares of Samuel and Thomas Ward had been distributed in 1973 and therefore were not "then existing" in 1977 and 1979 respectively, their heirs (the appellants here) contend that they are entitled to an outright distribution of one-fourth each (*per stirpes*) of Dora's and Elizabeth's shares. The trial court held that the provision was unambiguous and that the shares could only be added to the then existing trust estate, that is, the shares of Susan's and Jennie's children (the appellees here).

I

■■ It is fundamental that in construing a will, the intention of the testator, as determined from the provisions of the will, is to be given effect unless contrary to law. (*Weber v. Hawkins* (1964), 30 Ill. 2d 278, 196 N.E.2d 695; *Wiener v. Severson* (1957), 11 Ill. 2d 347, 143 N.E.2d 225.) This intention is to be sought from the words actually used in the will. (*Weber.*) Here, as the lower court found, the language of the will is clear and unambiguous. Paragraph 7(a), which is the only provision applicable, clearly provides that the funds are to be distributed to the trusts *then existing*; they cannot be distributed to trusts which used to exist but no longer do; they cannot be distributed as outright cash distributions as appellants seek. The provision of 7(a) differs markedly from the provision in paragraph 6(c), which applies only where issue of the children die without lawful issue within the 21-year period. That provision simply provides that such funds shall be divided and added to the other shares or parts of the trust estate. A will must be read and construed as a whole. (*Feder v. Luster* (1973), 54 Ill. 2d 6, 294 N.E.2d 293; *Peters v. Gebhardt* (1955), 6 Ill. 2d 534, 129 N.E.2d 731; *Walters v. Mercantile National Bank* (1942), 380 Ill. 477, 44 N.E.2d 429), and every word, phrase and clause given effect if possible. (*Feder v. Luster* (1973), 54 Ill. 2d 6, 294 N.E.2d 293; *Davidson v. Davidson* (1954), 2 Ill. 2d 197, 117 N.E.2d 769; *In re Estate of Tognotti* (1970), 128 Ill. App. 2d 120, 262 N.E.2d 803; *Untz v. Untz* (1979), 74 Ill. App. 3d 133, 392 N.E.2d 745.) Here the testator did not choose to treat the deaths of children without issue and grandchildren without issue in a similar fashion. Had he done so he could simply have referred to and adopted paragraph 6(c) in paragraph 7(a) as he did in paragraph 7(b). He did not. Instead he provided a different provision with different language and that language, being clear and unambiguous, must be enforced as written.

*Continental Illinois National Bank & Trust Co. v. Llewellyn* (1966),

67 Ill. App. 2d 171, 214 N.E.2d 471, *appeal denied* (1966), 33 Ill. 2d 627, relied on by the appellants, is not in point. In *Llewellyn* the will merely provided that in the event of the death of one of the children while part of the trust estate was being held for that child, the share "shall be added to the portions of Trust Estate to be distributed among the issue of my other children, as herein provided." Reading this language as a whole, and emphasizing the words "portions * * * to be distributed * * * as herein provided" the court held that the testator was not conditioning the application of such portion to the other portions of the trust upon these later portions still being in fact held for the issue of testator's other children; rather, he was merely directing that the portions be distributed in accordance with other provisions of the will. The language emphasized in *Llewellyn* does not appear in paragraph 7(a), and the testator in *Llewellyn* did not limit application to the "then existing shares or parts of my said trust estate," as the testator did here.

The appellants, relying on the presumption that the testator intended to dispose of his entire estate and not permit any part of it to pass by intestacy, citing *Whitmore v. Starks* (1959), 17 Ill. 2d 202, 161 N.E.2d 254, *Caracci v. Lillard* (1955), 7 Ill. 2d 382, 130 N.E.2d 514, *Dalton v. Eash* (1952), 411 Ill. 296, 103 N.E.2d 483, and *First National Bank v. Wilmot* (1971), 3 Ill. App. 3d 128, 278 N.E.2d 204, contend that the provision must be construed in their favor. This rule is inapplicable since there is no question of intestacy in this case. In each of the cases cited by appellants, one party was claiming the property did not pass by will and he was entitled to it by intestacy. In this case no one is claiming the property by intestacy.

The appellants, however, contend that the rule is applicable and dictates the construction in their favor. They contend that if the four of testators' children who had issue had died first and the other four had died 22 years later, then one-half of the estate would have passed by intestacy. Furthermore, they contend that for all testator knew only one of his eight children might leave surviving issue. If that child died first and the other children died 22 years later without surviving issue, the 7/8 of the estate would have passed by intestacy. These contentions are not only contrary to what actually occurred, they are highly unlikely even as speculation as to what might have occurred. For the first hypothesis to occur, Charles, the eldest child, who was 56 when the will was executed, would have had to survive by 21 years the deaths of Jennie, Thomas, Susan and Samuel. Instead, as might have been expected, Charles died first and Jennie, the youngest child who had children, was the last of testator's children to die (even surviving her two younger sisters who had no children). The second contention is even more unlikely since it presupposes not only that the oldest, Charles, would survive Jennie's death by 22 years despite the

13-year difference in their ages but that a large number of grandchildren born before the testator executed the will would die prematurely, predeceasing their parents, aunts and uncles, that the sole child having children would die first and his or her siblings would survive the death by 22 years.

■■ But even if we could accept the appellants' argument that some of the property might have passed by intestacy, the presumption against intestacy cannot be indulged in to overcome the express language in a will. Where, as here, the language is clear, express and unambiguous, the court cannot distort the language of the will even at the price of partial intestacy. *Whitmore v. Starks* (1959), 17 Ill. 2d 202, 161 N.E.2d 254; *Peoples Bank v. Hoffman* (1949), 403 Ill. 463, 86 N.E.2d 185; *Foss v. State Bank & Trust Co.* (1931), 343 Ill. 94, 175 N.E. 12.

■■ The appellants also contend that the disinheritance interpretation violates the rule that a peculiar or illogical scheme of distribution will not be followed where contrary to the clear intention of the testator (*Continental Illinois National Bank & Trust Co. v. Llewellyn* (1966), 67 Ill. App. 2d 171, 214 N.E.2d 471, *appeal denied* (1966), 33 Ill. 2d 627), and if two constructions are fairly possible, one of which indicates an absurd or unjust intention and the other indicates a reasonable and fair intention, the courts will give preference to that construction which indicates a fair and reasonable intention. (4 Bowe-Parker: Page on Wills §30.12 (1961).) But in this cause only one of appellants' two constructions is reasonably possible. Likewise, even if the scheme of distribution is illogical or peculiar, it is not contrary to the clear intention of the testator as shown by the language of the will. This court must enforce this clear contention. *Bergendahl v. Stiers* (1956), 8 Ill. 2d 257, 133 N.E.2d 280; *Peters v. Gebhardt* (1955), 6 Ill. 2d 534, 129 N.E.2d 731; *Wielert v. Larson* (1980), 84 Ill. App. 3d 151, 404 N.E.2d 1111.

■■ In addition, the appellants contend that the shares in question should be distributed among all the heirs because a construction conforming to the laws of inheritance will be favored over any other construction and equal treatment of descendents of equal degree is preferred. (*Continental Illinois National Bank & Trust Co. v. Llewellyn* (1966), 67 Ill. App. 2d 171, 214 N.E.2d 471, *appeal denied* (1966), 33 Ill. 2d 627.) But resort to such principles of interpretation is only proper when the testator's intentions cannot be ascertainable from the language of the will without reference to these rules. (*Horton v. Ferris* (1962), 24 Ill. 2d 32, 179 N.E.2d 680; *Wiener v. Severson* (1957), 11 Ill. 2d 347, 143 N.E.2d 225; *Allen v. Beemer* (1939), 372 Ill. 295, 23 N.E.2d 724; *White v. White* (1942), 312 Ill. App. 628, 39 N.E.2d 79, *appeal denied*.) Courts are without power, under the guise of interpretation, to change a testator's will or to make a new one

for him. (*Weir v. Leafgreen* (1962), 26 Ill. 2d 406, 186 N.E.2d 293; *Vollmer v. McGowan* (1951), 409 Ill. 306, 99 N.E.2d 337; *Domke v. McCue* (1969), 110 Ill. App. 2d 1, 249 N.E.2d 287.) A court may not distribute the testator's estate according to the court's sense of equity and justice rather than the testator's intention as expressed in the will. (*Altemeier v. Harris* (1948), 335 Ill. App. 130, 81 N.E.2d 22, *aff'd* (1949), 403 Ill. 345, 86 N.E.2d 229.) After all, except as limited by statute or contract, a testator has the right to distribute his property as he wishes. (*Logsdon v. Logsdon* (1952), 412 Ill. 19, 104 N.E.2d 622; *In re Estate of Haines* (1977), 51 Ill. App. 3d 163, 366 N.E.2d 548.) He can only do this through the words he employs in his will. Accordingly he must be able to rely on the fact that the court cannot and will not distort the clear language to achieve a result it prefers to the result the testator desired. It may be true, as appellants contend, that the quasi-tontine arrangement in the will is not equitable but it is not illegal. Being legal and not contrary to public policy, it must be given effect. *Storkan v. Ziska* (1950), 406 Ill. 259, 94 N.E.2d 185; *Fleshner v. Fleshner* (1941), 378 Ill. 536, 39 N.E.2d 9; *Lenzen v. Miller* (1941), 378 Ill. 170, 37 N.E.2d 833.

## II

The appellants also ask this court to enter a declaratory judgment to the effect that if Jennie Stewart's issue should die without issue before 2002, then under paragraph 6(c) that share would be distributed among all the issue of the other children. It would be improper for us to enter such a judgment since there is no actual controversy.

■■ Since Jennie Stewart died in 1981, her share of the trust will be distributed in 2002. Jennie left one son, now approximately 62 years of age and one granddaughter, now approximately 33 years of age. Before any question as to the interpretation of paragraph 6(c) can arise both must die before the year 2002 and both must die without leaving other issue. There is obviously no certainty or even any reason to believe this will happen. A court will not declare the rights of parties on a state of facts which has not arisen and which may never arise or on a matter which is future, contingent, and uncertain. *Midwest Petroleum Marketers Association v. City of Chicago* (1980), 82 Ill. App. 3d 494, 402 N.E.2d 709, *appeal denied* (1980), 81 Ill. 2d 593; *Baugher v. Walker* (1977), 47 Ill. App. 3d 573, 362 N.E.2d 410; *Berg v. City of Chicago* (1968), 97 Ill. App. 2d 410, 240 N.E.2d 344, *appeal denied* (1968), 39 Ill. 2d 627.

## III

As already stated, the trial court found the provision in controversy to be unambiguous. Nevertheless, it awarded the appellants $48,831.56 in

attorney fees and the appellees have cross-appealed. We agree with the cross-appellants that the award was erroneous since the provision was unambiguous.

■■ It is well established that while the question of attorney fees in an action to construe a testamentary agreement rests within the sound discretion of the trial court, such fees are allowable from the trust estate only if an ambiguity exists. (*Northern Trust Co. v. Winona Lake School of Theology* (1978), 61 Ill. App. 3d 966, 377 N.E.2d 1182, *appeal denied* (1978), 71 Ill. 2d 609.) Appellants contend that this rule is inapplicable because they were not plaintiffs but defendants, the suit being brought by the trustee. This is a distinction without a difference. The trustees brought the suit because there were conflicting claims to the funds. The litigation was necessary because appellants pressed their claim in their answer. Obviously had appellants conceded in their answer that appellees were entitled to the disputed shares of the trust, the attorney fees would not have been incurred. *Northern Trust Co. v. Winona Lake School of Theology* (1978), 61 Ill. App. 3d 966, 377 N.E.2d 1182, *appeal denied* (1978), 71 Ill. 2d 609, is persuasive. In *Winona*, as here, the suit was brought by the trustee. The trial court found the trust agreement to be ambiguous. It awarded both the trustee and the defendants attorney fees. The appellate court found there was no ambiguity in the trust agreement and accordingly held that the trial court erred in allowing attorney fees as to the construction of that agreement. However, because the court also found that an honest difference of opinion existed on another issue at trial, the cause was remanded for determination of the amount of fees to be awarded.

As discussed earlier in the opinion, we believe the trial court's ruling that the provision in question is unambiguous is correct. Accordingly we affirm the judgment of the trial court for the appellees. Since the provision was unambiguous, the authorities relied upon by the appellants which hold that where the will is ambiguous, all necessary parties to the litigation are entitled to attorney fees (*e.g., Orme v. Northern Trust Co.* (1962), 25 Ill. 2d 151, 183 N.E.2d 505, *cert. denied* (1962), 371 U.S. 935, 9 L. Ed. 2d 271, 83 S. Ct. 308), are inapplicable. Accordingly we reverse that part of the judgment awarding attorney fees to the appellant. While attorney fees were awarded to certain other parties, those awards were not appealed from and thus are not before this court for consideration.

Affirmed in part, reversed in part.

JIGANTI and LINN, JJ., concur.